UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
CHRISTOPHER PAGAN,

                      Petitioner,

              - against -                          CV-07-453 (J.S.)

WILLIAM BROWN, Superintendent

                      Respondent.
------------------------------------------------------x

## MEMORANDUM OF LAW

THOMAS J. SPOTA
District Attorney of Suffolk County
Criminal Courts Building
200 Center Drive
Riverhead, New York  11901
(631) 852-2500

MICHAEL J. MILLER
Assistant District Attorney
Of Counsel

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................... 1

Statement of Facts .................................................................................................. 2

Point One ............................................................................................................... 7

> PETITIONER'S WRIT SHOULD BE DENIED BECAUSE IT
> WAS PROCEDURALLY BARRED AND BECAUSE HE FAILS
> TO ESTABLISH HOW THE STATE COURTS' DECISIONS
> WERE CONTRARY TO OR AN UNREASONABLE
> APPLICATION OF CONTROLLING FEDERAL AUTHORITY.

Point Two ............................................................................................................. 11

> PETITIONER'S FOURTH AMENDMENT CLAIM CANNOT
> BE REVIEWED BECAUSE HE HAD A FULL AND FAIR
> OPPORTUNITY TO LITIGATE THE ISSUE IN THE STATE
> COURTS (Responding to Petitioner's Point I).

Point Three ........................................................................................................... 13

> THE STATE TROOPER'S SINGLE REFERENCE TO
> PETITIONER'S SILENCE DID NOT DENY HIM A FAIR
> TRIAL (Responding to Petitioner's Points II and III).

Point Four ............................................................................................................. 15

> PETITIONER'S GUILT WAS PROVEN BEYOND A
> REASONABLE DOUBT (Responding to Petitioner's Points V
> and VI).

Point Five ............................................................................................................. 17

> PETITIONER RECEIVED THE EFFECTIVE ASSISTANCE OF
> COUNSEL.

Conclusion ............................................................................................................ 20

Certificate of Service ........................................................................................... 21

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
CHRISTOPHER PAGAN,

                     Petitioner,

              - against -

WILLIAM BROWN, Superintendent

                    Respondent.
------------------------------------------------------x

## INTRODUCTION

      This Memorandum of Law is submitted, together with the Affirmation of Michael J.

Miller, in opposition to Christopher Pagan's (Pagan or petitioner) petition for a writ of habeas

corpus. Petitioner was convicted after a jury trial of second degree criminal possession of a

weapon, in violation of New York Panel Law Section 265.03(2). He was sentenced as a

persistent felony offender to serve 22 1/2 years to life imprisonment. Petitioner is in custody

based on this judgment of conviction. There were no codefendants.

**STATEMENT OF FACTS**[1]
**HEARING**

On September 17, 1998, Troopers Michael Mawn and Jared Schwarz were traveling eastbound on the Southern State Parkway at about 2:15 a.m. when their attention was drawn to a gray vehicle going westbound making a U-turn on the grassy median separating the westbound and eastbound lanes in order to proceed eastbound (H. pgs. 14, 15). Trooper Mawn also observed that the vehicle was operating without headlights and the operator was not wearing a seatbelt (H. pgs. 16, 17). Upon further observation, the Troopers noticed the vehicle weaving between the first and second lane of travel (H. pg. 17). Trooper Mawn activated their overhead lights in order to pull the vehicle over for the traffic violations. The Troopers were traveling in a vehicle that was higher off the ground than petitioner's vehicle, a Volkswagen Jetta, and coupled with their overhead and spotlights, they were able to see directly into petitioner's car (H. pg. 19).

While following the vehicle, Trooper Mawn observed the driver let go of the wheel and reach over into the front passenger seat with both hands, temporarily losing control (H. p. 20). Trooper Mawn testified that, in his training and experience, the driver was trying to hide something (H. pg. 95).

The vehicle eventually pulled over to the grassy shoulder of the Southern State Parkway, an area estimated to be 15 feet wide. The automobile came to a halt approximately three feet from the edge of the wooded area (H. pg. 22). The driver was observed climbing over the passenger seat and exiting the vehicle through the front passenger side door (H. pg. 24). When asked what he was doing, petitioner said that his car wasn't running right. When asked to produce his license and registration, petitioner stated he didn't have either (H. pg. 25). Because

---
[1] The Statement of Facts if taken from the brief filed by Respondent in the Appellate Division, Second Judicial Department.

of his proximity to the trees, the possibility of flight, and the officers' safety concerns, petitioner was asked to step to the rear of the vehicle (H. pg. 26). Petitioner appeared to be very nervous, would not make eye contact, and continued to look around in a furtive manner (H. pgs. 27, 28). He did not smell of alcohol (H. pg. 147).

Based upon the above factors, Trooper Mawn reasonably believed the car may have been stolen (H. pg. 30). Trooper Mawn went to the driver's side door to check the ignition to see if it was "popped" and registration sticker to see if it matched the plate (H. pg. 31). Petitioner remained at the rear of the vehicle, approximately 5 to 10 feet from the open passenger door, unsearched and uncuffed (H. pg. 157). The Trooper shined his flashlight through the driver's side window to check the ignition. This illuminated the entire front interior of the vehicle (H. pg. 31).

The Trooper observed a black stocking with two eyeholes cut out on the front passenger seat. Beneath the stocking the Trooper observed a fake hair-like substance that he believed to be a wig. He associated these items with armed robberies (H. pgs. 37-41).

Trooper Mawn entered the vehicle through the driver's side door. He touched the stocking and false hair which turned out to be a beard. He felt a hard object that he concluded was a weapon. He then found a .32 caliber semiautomatic handgun in a knit cap directly beneath the stocking mask and beard (H. pg. 43). Upon finding the gun, knowing petitioner was between 5' and 10' from an open passenger door, uncuffed and unsearched, the Trooper was in fear (H. pgs. 156-157).

After exiting the vehicle, the Trooper told petitioner that the car was uninspected, and that because petitioner had no license, the Trooper had to place petitioner in handcuffs (H. pg.

52). He did not tell petitioner he was arrested for weapons possession. Upon observing Trooper Mawn remove the gun and other items from the vehicle, petitioner said, "Oh, fuck." (H. pg. 88)

Trooper Mawn then administered *Miranda* warnings and waivers from a card. When asked the last waiver question, "Having these rights in mind do you wish to talk to us now," petitioner remained silent (H. pg. 98). Petitioner then spontaneously stated he was holding the gun for a friend (H. pg. 100).

Petitioner was transferred to the police barracks and met with Investigator Daniel Regini who advised him of his rights, which petitioner waived. He then made certain inculpatory statements regarding the gun. These statements included an assertion that he was returning the gun to Queens to its owner so he could obtain a better gun to do jobs with. He refused to reduce his statement to writing (H. pgs. 190-215).

**TRIAL**

Trooper Michael Mawn testified that he and Trooper Jared Schwarz were on routine patrol on the Southern State Parkway working on the 11:00 p.m. to 7:00 a.m. shift on September 17, 1998 (T. pg. 121). At about 2:15 a.m. Trooper Mawn was traveling eastbound when he observed a westbound gray Volkswagen make an illegal U-turn over the grass median to go eastbound (T. pg. 122). Trooper Mawn saw that the vehicle had no headlights on. When the vehicle started in the eastbound lanes, the Trooper could see that the car was occupied solely by the operator who was not wearing a seatbelt. The gray vehicle was weaving between the extreme right lane and the middle lane with no lights on (T. pg. 125).

Trooper Mawn then activated his lights in order to stop the vehicle to write traffic tickets for illegal U-turn, driving without headlights and possibly no seatbelt (T. pg. 126). Upon

4

activating the lights, the Troopers followed the car in the right hand lane (T. pgs. 126-127). The lights allowed the Trooper to observe the operator let go of the wheel and reach over in a lunging motion to the passenger side of the vehicle. The car swerved more severely to the middle lane (T. pg. 127).

The car pulled over and stopped on the grassy berm off the highway, approximately three feet from the tree line. The distance from the highway to the tree line is approximately 15 feet (T. pg. 128). Trooper Mawn approached the driver's side and Trooper Schwarz approached the passenger side. At this time Trooper Mawn observed petitioner jump the console and exit the passenger side. Trooper Schwarz was near the passenger side when petitioner exited (T. pg. 129).

Petitioner was asked what he was doing and he responded he was having car trouble. According to Trooper Schwarz, Pagan said his driver's side door wasn't working, and he was unable to produce a license or registration (T. pg. 130, 1243). He was asked to step to the rear of the vehicle and he complied. While being interviewed he seemed nervous, didn't make eye contact and seemed very apprehensive (T. pgs. 132, 244). Trooper Mawn approached the driver's side to check the ignition to see if it was "popped" indicating a stolen car and to check the sticker to see if it matched the plate. He shined his flashlight into the vehicle, saw the ignition was not "popped" and observed a stocking with eyeholes in it with an item that looked like a wig (T. pgs. 134-135). These items were in the passenger seating area where petitioner was previously seen placing both hands while operating the vehicle. (T. pg. 135).

Trooper Mawn entered the vehicle through the driver's side door, picked up the stocking, which he associated with robberies, and underneath that picked up what turned out to be a black beard. He put his hand down and felt something solid, which he believed to be a gun. Beneath the beard was a black knit cap which, when opened, revealed a shiny silver gun (T. pg. 136).

5

Trooper Mawn rejoined his partner and placed petitioner under arrest. He did not tell Pagan about the gun. Petitioner was told he was under arrest because he had no identification and the Troopers had to figure out what was going on (T. pg. 138). Petitioner was handcuffed and placed in the police vehicle. Trooper Mawn took all the items from the front seat and brought them back to the police vehicle, and upon observing the gun, petitioner said, "oh fuck" (T. pg. 141).

Trooper Mawn gave Pagan his *Miranda* rights and when asked if there was anything he wanted to say to the police at this time he answered "no" (T. pg. 147).

During the ride, petitioner said that he was holding the gun for a friend (T. pg. 149). Upon arriving at the barracks, Trooper Mawn gave the gun to his Supervisor, Sergeant Hubbard. The sergeant unloaded the weapon which contained one bullet (T. pg. 150).

Trooper Mawn met with Investigator Regini and told him about the case. He provided the evidence to Investigator Regini.

Firearms examiner Charles Hopkins testified to the operability of the weapon and that he received it with one bullet, which he used in the test firing.

Trooper Jared Schwarz testified corroborating Trooper Mawn (T. pg. 246-267).

Investigator Regini processed the evidence in the case. He also questioned petitioner. Prior to questioning petitioner, Investigator Regini administered *Miranda* rights; petitioner waived them and subsequently made certain admissions including an assertion that he was returning the gun to the owner in Queens in order to get a better gun to do jobs with (T. pgs. 277-279).

## POINT ONE

**PETITIONER'S WRIT SHOULD BE DENIED BECAUSE IT WAS PROCEDURALLY BARRED AND BECAUSE HE FAILS TO ESTABLISH HOW THE STATE COURTS' DECISIONS WERE CONTRARY TO OR AN UNREASONABLE APPLICATION OF CONTROLLING FEDERAL AUTHORITY.**

### 1. Exhaustion

In the interests of comity and in keeping with the requirements of 28 U.S.C. § 2254(b), federal courts will not consider a constitutional challenge that has not first been "fairly presented" to the state courts. See, *Ayala v. Speckard,* 89 F.3d 91, 94 (2d Cir. 1996), citing *Picard v. Connor,* 404 U.S. 270, 275 (1971). Petitioner must first "fairly present" both the factual and legal premises on his federal claim to the highest state court. *Baldwin v. Reese,* 541 U.S. 28 (2004); see also *Jones v. Keane,* 329 F.3d 290, 294-95 (2d Cir. 2003). Thus, in order to seek habeas corpus relief, a petitioner must exhaust the remedies available in the state court or demonstrate that "there is an absence of available State corrective process [or] [that] circumstances exist that render such process ineffective to protect the rights of the [petitioner]." *Fama v. Commissioner of Correctional Services,* 235 F.3d 804, 808 (2d Cir. 2000) (insertions in the original).

Here, petitioner has exhausted all of his state court remedies because he has directly appealed or collaterally attacked his conviction in the highest state courts. Also, petitioner's writ is timely because it is within one year of when his time for filing a writ of certiorari expired. See, *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir.); Supreme Court Rule 13(1) (establishing ninety-day period for filing petition for writ of certiorari).

## 2. Petitioner's Writ is Defective

At the outset we note that petitioner's writ is defective because he provides only general assertions regarding the alleged constitutional violations. Notably, he sets forth no specific facts to support any of his claims; nor does petitioner address how the state court decisions were constitutionally erroneous. Habeas review is not the equivalent of an appeal of a criminal conviction and federal habeas corpus courts do not sit as "super" state appellate courts. See, *Ponnapula v. Spitzer*, 297 F.3d 172 (2d Cir. 2002). The role of a federal habeas corpus petition is not to serve as an additional appeal in a state court. See, *Schaefer v. Leone*, 443 F.2d 182 (2d Cir. 1971). Also, "[f]ederal courts are not forums in which to relitigate state trials." *Herrera v. Collins,* 506 U.S. 390, 401, 113 S. Ct. 853 (1993) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 887, 103 S. Ct. 3383 [1983]).

Respondent acknowledges that a pro se petitioner's application is not reviewed with the same stringency as are formal pleadings drafted by lawyers (*Hughes v. Rowe*, 449 U.S. 5, 9-10, 101 S. Ct. 173 [1980]) and that a pro se petitioner's pleadings must be read liberally in order to present the best argument suggested by them. *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). However, a pro se petitioner is not exempt from rules of procedure and substantive law. *Traguth v. Zach*, 710 F.2d 90, 95 (2d Cir. 1983). In his writ, petitioner presents only a statement of the issues he wishes to raise. He presents no argument why or how the State court decisions are incorrect. As such, this petition should be dismissed because petitioner has set forth neither factual nor legal support for his claims.

## 3. Standard of Review

Should, however, the Court elect to review the petitioner's claims as previously set forth in his direct appeals and post-conviction motions, he is still not entitled to relief. According to

the provisions of 28 U.S.C. § 2254(a) (AEDPA), an application for a writ of habeas corpus by a prisoner in State custody "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless either the State court decision was contrary to or an unreasonable application of clearly established Federal law as determined by the Supreme Court, or was based on an unreasonable determination of the facts based on the evidence presented in the State court proceedings. The standards set forth by AEDPA apply to all habeas petitions filed after the statute's effective date of April 24, 1996. See, *Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir. 2001) (citing *Williams,* 529 U.S. at 402).

In *Williams v. Taylor*, the Supreme Court wrote that a State court decision is "contrary to" clearly established Federal law, "if the state court arrives at a conclusion opposite that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 429 U.S. at 413. Likewise, a State court decision is an "unreasonable application" of clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* In assessing unreasonableness, the determinative inquiry is "whether the state court's interpretation was unreasonable in light of the holdings of the United States Supreme Court at the time." *Brown v. Greiner,* 409 F.3d 523, 533 (2d Cir. 2005); see also *Williams v. Taylor,* 529 U.S. at 405. Clearly established law refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decisions." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 [2000]).

### 4. Deference

Also, whenever a state court has adjudicated an issue on the merits, the federal court must apply a deferential standard of review. Under 28 U.S.C. § 2254(e)(1), a state court's factual findings enjoy a "presumption of correctness." See, *Ventura v. Meachum,* 957 F.2d 1048, 1054 (2d Cir. 1992). A state court's determination of a factual issue is presumed to be correct, and is unreasonable only where the petitioner meets the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1), see, *Shabazz v. Artuz,* 336 F.3d 154, 161 (2d Cir. 2003). Importantly, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).

For the purposes of AEDPA deference, a petitioner's state claim has been adjudicated on the merits where the state court "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment. Deference applies even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir. 2001).

**POINT TWO**

**PETITIONER'S FOURTH AMENDMENT CLAIM
CANNOT BE REVIEWED BECAUSE HE HAD A FULL
AND FAIR OPPORTUNITY TO LITIGATE THE ISSUE IN
THE STATE COURTS (Responding to Petitioner's Point I).**

Petitioner states that there was no probable cause to either shine a flashlight into his car or to subsequently search it. He proposes that this Court review his claim because he did not have a full and fair opportunity to present the claims in the State Court. A pretrial suppression hearing was, however, held in the State Court. Petitioner was represented by counsel, John Bray, Esq., and the hearing was held to determine if there was probable cause to search petitioner's car and whether petitioner's statements are voluntarily made. The prosecution witnesses were subject to cross-examination and petitioner could have, but did not, call witnesses.

A petitioner's claim that his Fourth Amendment rights i.e., that his arrest was without probable cause were violated is barred from federal habeas corpus review [*Stone v. Powell*, 428 U.S. 465 (1976)], so long as the petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in the state courts. *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991); see *Stanley v. Kuhlman*, 10 F. Supp.2d 250 (E.D.N.Y. 1998); *Gonzalez v. Superintendent, Sullivan Corr. Facility*, 761 F. Supp. 973 (E.D.N.Y. 1991); *Schuler v. Sullivan*, 644 F. Supp. 856 (S.D.N.Y. 1986); see, e.g., *France v. Artuz*, ___ F. Supp.2d ___, 1999 WL 1251817 (E.D.N.Y. 1999) (No. 98-CV-3850). In order to overcome the procedural bar, petitioner must demonstrate that there was an unconscionable breakdown in the state procedures. *People v. Kelly*, 667 F. Supp. 963 (E.D.N.Y. 1987), *app. dismissed*, 856 F.2d 181 (2d Cir. 1988). As the majority held in *Stone v. Powell*:

> [W]here the State has provided an opportunity for full and fair
> litigation of the Fourth Amendment claim, the Constitution does

> not require that a state prisoner be granted federal habeas corpus
> relief on the ground that evidence obtained in an unconstitutional
> search and seizure was introduced at his trial. *Id*., at 481-82.

Here, petitioner was provided with the opportunity to litigate any Fourth Amendment claims, and did in fact do so in the pretrial hearings. Because petitioner has failed to prove an " unconscionable breakdown" in the system that prevented him from raising his claim, we urge that habeas review is not warranted. *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977); see *McPhail v. Warden*, 707 F. 2d 67, 70 (2d Cir. 1983); *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987). In any event, we submit that probable cause existed to support his warrantless arrest. We urge that a review of the hearing record, as the appellate court correctly determined, demonstrates that not only did the police have reasonable suspicion to stop defendant's car, there was reasonable cause to arrest him--petitioner's artificial parsing of the evidence, notwithstanding.

## POINT THREE

## THE STATE TROOPER'S SINGLE REFERENCE TO PETITIONER'S SILENCE DID NOT DENY HIM A FAIR TRIAL (Responding to Petitioner's Points II and III).

The second and third points raised by petitioner relate to his statements after he was arrested. After his arrest petitioner was read his *Miranda* rights and waivers. At the pretrial hearing Trooper Mawn said petitioner remained silent after being read his rights (H. pg. 98), and at trial he testified that petitioner said "no" when he was asked if he wanted to speak with the troopers at that time (T. pg. 147). Petitioner was later questioned by Investigator Regini; his statements to Regini were admitted into evidence at trial (T. pgs. 277-79).

In his direct appeal petitioner argued that the jury should not have heard that he invoked his right to remain silent and that his statements to Investigator Regini should have been suppressed. The linchpin to these arguments was the discrepancy between Trooper Mawn's hearing and trial testimony; whether petitioner remained mute or invoked his right to remain silent.

In response to these arguments Respondent noted (in reverse order) that in order to suppress his statements, petitioner should have moved to reopen the suppression hearing. Respondent also maintained that petitioner did not invoke his right to remain silent. Finally, Respondent maintained that any error was harmless beyond a reasonable doubt.

The record establishes that both the trial court and defense counsel wanted Trooper Mawn to explain how *Miranda* rights and waivers were administered to petitioner even though the prosecution did not want to even hint that petitioner remained silent (T. pgs. 143-48). Arguably, defense counsel was not concerned that petitioner remained silent after the *Miranda* rights and waiver were read the first time. Indeed, the trial court, prosecutor and defense counsel

13

were surprised by Trooper Mawn's statement that petitioner said "no" when he was asked if he would speak with the police (T. pgs 147-48).

In any event the sole reference to petitioner's right to remain silent did not deny him his right to a fair trial. The sole charge in this case was possession of a weapon. Once the pistol was found in petitioner's car the crime was completed. Unless petitioner was able to produce a valid permit for the weapon, there was no circumstance that would permit his possession of it. Any error was, therefore, harmless beyond a reasonable doubt because petitioner's explanation (that he was holding it for a friend) and statement (essentially that he wanted a better gun to do robberies) were immaterial to his unlawful possession. In this regard the robbery paraphernalia found in petitioner's car (the mask, fake beard and knit hat) established petitioner's intent to use the gun unlawfully. Any error was harmless. *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246 (1991); *People v Crimmins*, 36 N.Y.2d 230 (1975).

**POINT FOUR**

**PETITIONER'S GUILT WAS PROVEN BEYOND A REASONABLE DOUBT (Responding to Petitioner's Points V and VI).**

In his brief on direct appeal petitioner maintained that two elements of the crime charged were not proven. Specifically he argued that the prosecution failed to both prove that the gun was loaded when it was seized and that he intended it to be used unlawfully against another. N.Y.P.L. §265.03. To the extent that petitioner's argument raises questions about the elements and proof required to sustain this conviction, this is a matter of State law beyond the purview of a federal habeas corpus court. To the extent that petitioner maintains that there was no proof beyond a reasonable doubt, the elements of the crime were established.

A sufficiency of evidence claim is essentially a state question (*Howe v. Scully,* 582 F. Supp. 277, 278-79 [S.D.N.Y. 1984]) and it is not the "province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire,* 502 U.S. at 62, 112 S. Ct. 475. When considering the sufficiency of the evidence, state law determines the elements of a crime. *Fama v. Commissioner of Correctional Services,* 235 F.3d 804, 811 (2d Cir. 2000); citing *Quartararo v. Hanslmaier,* 186 F.3d 91 (2d Cir. 1999). A state court's determination of a factual issue is presumed to be correct, and is unreasonable only where the petitioner meets the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1), see, *Shabazz v. Artuz,* 336 F.3d at 161. Because petitioner has not met his burden, he is not entitled to review. Nevertheless his claim is without merit.

A habeas petitioner challenging the sufficiency of evidence bears "a very heavy burden." *Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir. 2002), *Einaugler v. Supreme Court of New York,* 109 F.3d 836, 840 (2d Cir. 1997). A habeas challenge to the sufficiency of evidence "does

15

not require the court to 'ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S. Ct. 2781 (1979) (quoting, *Woodby v. INS,* 385 U.S. 276, 282, 87 S. Ct. 483 [1966]). Rather, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *Id.* (emphasis in original.)

In making this assessment, the court may not "disturb the jury's finding with respect to the witness' credibility." *United States v. Roman,* 870 F.2d 65, 71 (2d Cir. 1989). Also, the court may not "make credibility judgment about the testimony presented at petitioner's trial or . . . weigh conflicting testimony." *Fagon v. Bara,* 717 F. Supp. 976, 979 (E.D.N.Y. 1989), citing *United States v. Zabare,* 871 F.2d 282, 286 (2d. Cir. 1989). The court must presume "even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson,* 34 F.3d 60, 66 (2d Cir. 1990) (quoting, *Jackson,* 443 U.S. at 326). Thus, relief exists only where "the record is 'so totally devoid of evidentiary support that a due process issue is raised." *Bosset v. Walker,* 41 F.3d 825, 830 (2d Cir. 1994).

Here, there was no violation of petitioner's due process rights. The evidence overwhelmingly established that petitioner possessed a loaded .32 caliber handgun. He also possessed a stocking mask, knit cap and a fake beard. All of these items are consistent with and are indeed of a plan to commit robberies. The trial testimony was sufficient to establish all the elements of the crime for a rational fact-finder.

**POINT FIVE**

**PETITIONER RECEIVED THE EFFECTIVE ASSISTANCE
OF COUNSEL.**

In his motion to vacate his judgment of conviction petitioner maintained that both pretrial and trial counsel were ineffective. This claim is unsupported by the record and without merit. We note that the other issues raised in this petition exist because of the effective assistance of counsel. Those issues are, we maintain, meritless. Nevertheless, trial counsel's representation was effective when compared to the hopeless task he faced.

Petitioner was charged with a possessory offense. Trial counsel conducted a pretrial hearing to suppress the evidence against petitioner. Once it was held that the evidence was admissible at trial, trial counsel litigated whether the gun was loaded and whether there was the requisite intent to use the gun unlawfully. Furthermore, trial counsel moved for a mistrial based on discrepancies in the Troopers' testimony. Considering the simple and clear-cut nature of the charge against petitioner, trial counsel raised viable issues in defense of his client. Thus, even if defense counsel's performance was not perfect, petitioner has failed to establish that he was prejudiced by it.

To prevail on a constitutional claim of ineffective assistance of counsel, petitioner must show: (1) that his counsel's performance at trial "fell below an objective standard of reasonableness" (*Strickland v. Washington,* 466 U.S. 668, 687-88, 104 S. Ct. 2052 [1984]); and (2) that the performance caused him "substantial prejudice." *Id.* at 691, 694. With respect to the first prong of the *Strickland* test, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. In evaluating trial counsel's performance, the "court must indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance." *Id.* at 689. "[S]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. As a result, "the fact that counsel is prepared and familiar with the relevant facts and legal principles is usually sufficient to defeat a claim that trial counsel was ineffective." *Brown v. Phillips,* __ F.Supp.2d __, 2006 WL 656973 (E.D.N.Y. 2006) (quoting, *Farrington v. Senkowski,* 19 F. Supp.2d 176, 179 [S.D.N.Y. 1998]). In assessing counsel's conduct, the application of hindsight is to be avoided. Counsel's efforts, should not be second guessed with the clarity of hindsight to determine how the defense might have been more effective. See, *Strickland,* 466 U.S. at 689. With respect to the second prong of the *Strickland* test, "substantial prejudice" requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable," and that there is a reasonable probability that "but for" the claimed errors of counsel, the trial result would have been different." *Strickland*, 466 U.S. at 694. In other words, counsel's errors must undermine the court's confidence in the trial's outcome. *Id.* at 691.

In his motion to vacate the judgment of conviction petitioner maintained that Mr. Vitale, who succeeded in having the original indictment dismissed, did not adequately represent him during the Grand Jury proceeding. These arguments were based on petitioner's unwillingness to listen to counsel's advice and his arrogant dissatisfaction with his untenable situation. He also argued that he was denied the counsel of his choice when, at the start of jury selection, he said he was seeking his own lawyer to represent him (T. pg. 4-8). The trial court denied the last minute request to relieve assigned counsel because it was questionable whether petitioner could have ever retained counsel. Indeed, at this point petitioner was represented by his third assigned attorney and it was only when the jury panel was ready to enter the courtroom that he said he

would seek his own retained counsel. Finally, petitioner maintained that trial counsel (Mr. Bray) was ineffective for a variety of reasons that were both individually and collectively meaningless.

Petitioner received the effective assistance of counsel. Pretrial he received good legal advice which he refused to accept. At trial, counsel defended petitioner when he refused a plea bargain and when the charge against him was easy for the prosecution to prove. There was no prejudice to petitioner created by either counsel and, therefore, the writ of habeas corpus should not be issued.

**CONCLUSION**

**THE PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE DENIED.**

DATED:      Riverhead, New York
                  March 19, 2007

                              Respectfully submitted,

                              THOMAS J. SPOTA
                              District Attorney of Suffolk County

                              _____/s/_____
                              By:     MICHAEL J. MILLER (2206)
                                        Assistant District Attorney

**Certificate of Service**

I hereby certify that on March 19, 2007, the Answer/Return and Memorandum of Law for Respondent were filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following party and participant:

Christopher Pagan, #99-A-3782
Eastern Correctional Facility
P. O. Box 338
Napanoch, New York  12458

THOMAS J. SPOTA
District Attorney of Suffolk County
By:  MICHAEL J. MILLER (2206)
Assistant District Attorney
Criminal Courts Building
200 Center Drive
Riverhead, New York  11901
(631) 852-2500