```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
CHRISTOPHER PAGAN,

                    Petitioner,

         -against-                        MEMORANDUM & ORDER
                                          07-CV-0453 (JS)(WDW)

WILLIAM BROWN, Superintendent of
Eastern Correctional Facility,

                    Respondent.
-------------------------------------X
APPEARANCES:
For Petitioner:    Alan Nelson, Esq.
                   3000 Marcus Avenue
                   Lake Success, NY 11042

For Respondent:    Michael J. Miller, Esq.
                   Suffolk County District Attorney's Office
                   Criminal Courts Building
                   200 Center Drive
                   Riverhead, NY 11901
```

SEYBERT, District Judge:

Pending before the Court are Christopher Pagan's ("Petitioner") Objections to Magistrate Judge William D. Wall's January 19, 2011 Report and Recommendation (the "R&R") recommending that the Court deny Petitioner's petition for a writ of habeas corpus. The Court has considered Petitioner's Objections and has reviewed his arguments de novo, and it concludes that Petitioner is not entitled to habeas relief. The R&R is adopted, and the petition is dismissed.

BACKROUND

In 1999, Petitioner was convicted of Criminal

Possession of a Weapon in the Second Degree after a trial in New York Supreme Court, Suffolk County. See Obj. at 1. The details of Petitioner's case are set forth in Judge Wall's thoughtful and comprehensive R&R. Petitioner accepts this factual background, see id. at 3, and, having reviewed it for clear error, the Court adopts it for the discussion that follows.

## DISCUSSION

District courts "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b). When a party makes specific objections to the magistrate's findings, district courts must review those findings de novo. United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997). When a party makes no objections, or where it makes only conclusory or general objections, courts will review the magistrate's findings for clear error. See Walker v. Vaughan, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2002) (citation omitted); Barratt v. Joie, No. 96-CV-0324, 2002 U.S. Dist. LEXIS 3453, at *2 (S.D.N.Y. 2002) (citations omitted).

Petitioner challenges his conviction on the following grounds: that (1) Petitioner was improperly denied the trial counsel of his choice; (2) the trial court improperly received evidence that Petitioner had invoked his right to remain silent;

2

(3) the trial court improperly admitted Petitioner's post-Miranda statements; (4) the evidence was insufficient to sustain Petitioner's conviction; and (5) the police improperly searched Petitioner's car. See Obj. at 1-2. Petitioner objected to the R&R's conclusions on each of these points, and the Court considers each below.

I. Standard of Review Under 28 U.S.C. § 2254(d)(1)

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner when prior state adjudication of the prisoner's case "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 161 L. Ed. 2d 334 (2005). A "state-court decision involves an unreasonable application of [the Supreme] Court's clearly established precedents if the state court applies [them] to the facts in an objectively

3

unreasonable manner." Id. Clearly established Federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Yarborough v. Alvarado, 541 U.S. 652, 660-61, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004) (internal quotation marks omitted).

II. Petitioner is not Entitled to Habeas Relief

The Court addresses each of Petitioner's grounds for relief in turn.

A. Counsel of Petitioner's Choice

Petitioner argues that he was deprived of his Sixth Amendment right to be represented by counsel of his choice when the trial court refused his eve-of-trial request for a one-day adjournment to retain a new lawyer. The Court agrees with Judge Wall's recommendation that this claim be denied. The trial court's decision not to delay trial was not contrary to, or an unreasonable application of, federal law.

Petitioner maintains that he lost confidence in his trial counsel, John Bray, Esq., after Bray told Petitioner that Bray was being "forced" to go to trial and that the trial court had essentially predetermined Petitioner's guilt. Obj. at 3-4. On the day of trial, Petitioner sought and was refused a one-day adjournment to retain a new lawyer. Obj. at 4-5. The trial

4

court inferred from his request--and Petitioner's appearance in court that day without substitute counsel--that Petitioner's plea for an adjournment was an insincere attempt to delay the trial. See Obj. at 4-5.

Relying largely on United States v. Gonzalez-Lopez, 548 U.S. 140, 126 S. Ct. 2557 (2006), Petitioner contends that the trial court's refusal to grant an adjournment deprived him of his Sixth Amendment right to the counsel of his choice. But Gonzalez-Lopez teaches only that a defendant's choice of counsel should not be wrongfully denied; as Judge Wall noted, the Supreme Court expressly reaffirmed that a defendant's choice of counsel sometimes yields to "the demands of [the trial court's] calendar" and its power "to make scheduling . . . decisions." Gonzalez-Lopez, 548 U.S. at 152 (citations omitted). A defendant "does not have an unfettered right to retain new counsel," United States v. Brumer, 528 F.3d 157, 160 (2d Cir. 2008) (quotations omitted), and the trial court's desire to avoid delaying a criminal proceeding is generally a valid reason to deny a defendant's request to substitute counsel. Id. at 161. And requests made on the eve of trial should only be granted in "unusual circumstances," such as a "complete breakdown of communication or an irreconcilable conflict." United States v. Miranda, 152 F.3d 921 (2d Cir. 1998)

5

(quotations omitted).

Petitioner has not demonstrated that the trial court's denial of his request warrants habeas relief. The trial record shows that the trial court carefully considered Petitioner's proffered reason for his request for an adjournment--that he had lost confidence in his representation when Mr. Bray said he was being "forced" into trial--and explained to Petitioner that, short of a guilty plea, a trial was the inevitable consequence of his arrest and that not one individual was responsible for forcing a trial. Trial Tr. at 4-13. The trial court weighed Petitioner's argument against the circumstances surrounding Petitioner's request--an eve-of-trial application made without any substitute counsel present. Id. Its decision to refuse Petitioner's request was not unreasonable, and the Court agrees with Judge Wall's recommendation that Petitioner be denied relief on this point.

Petitioner objects that Judge Wall (1) overlooked the distinction between a defendant's right to effective assistance of counsel and his right to counsel of his choice; and (2) incorrectly balanced Petitioner's right to counsel of his choice against the trial court's need to manage its calendar. Obj. at 7. The first objection is incorrect; Judge Wall focused on a defendant's right to select his own counsel. See R&R at 11-15.

Petitioner's second objection is also unavailing because a habeas court does not do any balancing of its own; rather, it is only concerned with making sure the state court did not reach a conclusion that is at odds with clearly established federal law. In other words, regardless of whether Judge Wall or this Court would have decided his adjournment request differently, Petitioner is only entitled to habeas relief if the trial court's decision was objectively unreasonable. See Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Accordingly, Petitioner's Sixth Amendment claim is denied.

    B.    Petitioner's Fifth Amendment Claims are Unavailing

Petitioner raises two Fifth Amendment claims: first, that the jury heard evidence that Petitioner had invoked his right to remain silent; and second, that the prosecution introduced Petitioner's post-Miranda statements. Petitioner frames the latter argument both in terms of his protection against self-incrimination and his right to counsel. The Court addresses each in turn.

    1. Any Doyle Violation was Harmless

Petitioner argues that testimony that he would not answer the troopers' questions after being read the traditional Miranda warnings amounts to the type of Fifth Amendment violation first recognized in Doyle v. Ohio, 426 U.S. 610, 618

7

(1976). In that case, the U.S. Supreme Court explained that because a Miranda warning carries an "implicit" assurance that "silence will carry no penalty . . . it would be fundamentally unfair and a deprivation of due process to allow an arrested person's silence to be used to impeach an explanation subsequently offered at trial." Id.

Here, as Trooper Mawn was recounting the events on the morning of Petitioner's arrest, he explained:

> I read him his rights. I told him he has the right to remain silent. I told him that anything he said could be used against him in a Court of Law. I told him if he had to go to trial over this matter, if he couldn't afford an attorney that an attorney would be provided for him by the court. And I asked him if he understands those rights, he indicated he did and I asked him if there was anything he wanted to say to us at this time and he said no.

Trial Tr. at 146-47. Immediately following these remarks, Petitioner moved unsuccessfully for a mistrial, and the trial court did not provide a curative instruction to the jury. See R&R at 17; Pet. Obj. at 13. At no point during the trial did the prosecution refer to Petitioner's invocation of his right to silence, but Petitioner's counsel referred to it several times while cross-examining police witnesses. Trial Tr. 193, 196, 262.

For the following reasons, the Court is not convinced

that a Doyle violation occurred in this case but, in any event, any violation was harmless. Since reasonable jurists may disagree whether a Doyle violation occurred, the Court will issue a Certificate of Appealability as to only the question of whether the purported Doyle violation warrants habeas relief.

### a. The Alleged Doyle Violation

The Court agrees with Judge Wall that there was no Doyle violation here. In his Objections, Petitioner chiefly argues that he is entitled to relief because the trial court did not give a limiting instruction and because the trial court's insistence on hearing testimony that Petitioner responded "no" rendered that testimony particularly harmful. Obj. at 16. The Court considers both arguments in turn.

Petitioner's first argument is unavailing because a trial court's failure to give a limiting instruction does not automatically give rise to a Doyle violation in cases where, as here, the prosecution does not suggest to the jury that it infer a defendant's guilt from his post-Miranda silence. See Lee v. Pallito, 2010 WL 2265044, at *4 (D. Vt. Apr. 12, 2010) (no Doyle violation where, "even assuming that Lee did invoke his right to silence, the prosecution did not actively promote an inference of guilt"); adopted 2010 WL 2265046 (D. Vt. June 4, 2010); Montano v. McCann, 2009 WL 1033598, at *3 (N.D. Ill. Apr. 17,

2009). As Judge Wall pointed out, in this case the prosecution did not ask follow-up questions or argue to the jury that they treat Petitioner's silence as a tacit admission of guilt. Indeed, the trial record shows that the prosecutor was keenly aware that any such suggestion would have been improper; at the sidebar, he protested that the trial court risked a mistrial by asking Trooper Mawn about the Miranda procedure in this case. Trial Tr. at 144-45.

Petitioner relies on Greer v. Miller, 483 U.S. 756, 107 S. Ct. 3102, 97 L. Ed. 2d 618 (1987) to argue that trial courts must give a curative instruction in all cases where the jury hears that a defendant has exercised his right to remain silent. The Court is not persuaded. Petitioner did not request a limiting instruction, and the Court agrees with Judge Wall's reading that Greer does not require a trial court to issue a limiting instruction where references to a defendant's silence are not portrayed as a tacit admission of guilt. R&R at 20. As Judge Wall noted, Greer teaches that references to a defendant's silence may, in some cases, constitute a Doyle violation, but it does not compel the conclusion that the absence of a limiting instruction is a Doyle violation per se. Id.

Petitioner's second objection is that the trial court's insistence that Trooper Mawn testify about the Miranda

10

warnings somehow made Mawn's testimony about Petitioner's silence especially prejudicial. The Court disagrees that the trial court's conduct was extra harmful, particularly because the prosecution did not seek to capitalize on that testimony during the trial.

                b. Any Doyle Violation was Harmless

The testimony that Petitioner invoked his right to silence does not warrant habeas relief because, even assuming a violation occurred, any error was harmless because there was ample independent evidence to convict Petitioner. See Grigg v. Phillips, 401 Fed. Appx. 590, 595 (2d Cir. 2010) (applying harmless error analysis to purported Doyle violation). At the time Petitioner was convicted, Criminal Possession of a Weapon in the Second Degree required the prosecution to prove (1) possession of a loaded firearm with (2) intent to use it unlawfully against another. N.Y. PENAL LAW § 265.03 (effective through Dec. 20, 2005).[1] In New York, the gun's presence in Petitioner's car is presumptive evidence that Petitioner possessed it, and the possession of a firearm is presumptive evidence that he intended to use it unlawfully against another person. See N.Y. PENAL LAW § 265.15(3), (4); New York v. Gibbs, 681 N.Y.S. 2d 10 (1st Dep't 1998). Further, the jury heard that

---

[1] This statute was amended in 2005 and twice in 2006.

11

the gun was loaded and that it was found among items that could be used to obscure a perpetrator's identity during a robbery. See Trial Tr. at 136. Most importantly, Petitioner admitted to the police that the gun was his. Trial Tr. 278-79. In short, the reference to Petitioner's post-Miranda silence was a very small part of a trial in which the prosecution's case "was, if not overwhelming, certainly weighty." Grigg, 401 Fed. Appx. at 594 (holding a purported Doyle violation harmless).

### 2. Petitioner's Post-Miranda Statements

Petitioner's second Fifth Amendment claim is that the trial court improperly admitted statements that he made to police after he was re-Mirandized at the police barracks. As Judge Wall noted, Petitioner casts this claim both in terms of a defendant's right to remain silent and his right to counsel. These arguments appear to be unexhausted, but the Court nonetheless denies them as plainly without merit. See Mingo v. Ercole, No. 08-CV-4818, 2010 WL 4941483, at *5 (E.D.N.Y. Nov. 30, 2010).

#### a. Petitioner's Right to Counsel

Once a defendant clearly and unambiguously invokes his right to counsel, a police interrogation must cease for at least fourteen days. Maryland v. Shatzer, __ U.S. __, 130 S. Ct. 1213 (2010); Davis v. United States, 512 U.S. 452, 459, 114 S. Ct.

2350, 2355 (1994). The Court agrees with Judge Wall that Petitioner did not clearly and unambiguously invoke his right to counsel. Petitioner objects that his "oh fuck" exclamation made when he realized Trooper Mawn found his gun, coupled with his invocation of his right to silence, amount to an implied request for an attorney. Obj. at 19 (Petitioner's "combined actions . . . demonstrate[] that a reasonable officer under the circumstances would understand the defendant's statement to be a request to terminate questioning and for an attorney."). Petitioner offers no legal authority for this argument, and the Court has found none.

b. Right to Remain Silent

Having concluded that Petitioner did not invoke his right to counsel, the remaining issue, as Judge Wall explained, is whether the trial court improperly admitted statements that Petitioner had made after he invoked his right to remain silent at the time of the roadside Miranda warning. Petitioner objects that once a suspect indicates that he wishes to remain silent, police must cease questioning him until he reinitiates a conversation or his lawyer arrives. Obj. at 20. This rule, however, addresses situations where a suspect invokes his right to counsel. See Minnick v. Mississippi, 498 U.S. 146, 150-51, 111 S. Ct. 486 (1990). Rather, the framework for considering

13

interrogations where a suspect has only invoked his right to remain silent is whether the police "scrupulously honored" the suspect's rights. See Michigan v. Mosley, 423 U.S. 96, 99, 96 S. Ct. 321 (1975). The Court agrees with Judge Wall that the police honored Petitioner's right to remain silent: they ceased their questioning in the field and only reinitiated contact later at the police station, where a new police officer re-read the Miranda warning. See R&R at 23. Having been read that warning, Petitioner voluntarily provided the statements that were introduced at trial. Id. Accordingly, Petitioner's Fifth Amendment claims are denied.

C. Sufficiency of the Evidence

Petitioner asserts that his conviction is based on insufficient evidence, arguing specifically that the prosecution failed to prove the gun was loaded and that Petitioner intended to use it unlawfully against another. Obj. at 21-27. Nested within that challenge, however, is a Confrontation Clause claim that Trooper Mawn's testimony that he learned the gun was loaded when his sergeant unloaded it was inadmissible hearsay. Respondent argues that these claims are unexhausted; the Court addresses both the Confrontation Clause and sufficiency claims in turn and, because each is plainly without merit, denies them both. See Mingo, 2010 WL 4941483, at *5.

### 1. Confrontation Clause

Petitioner's Confrontation Clause claim fails because, as Judge Wall explained, the statement complained of was not hearsay at all. R&R at 26. Trooper Mawn's testimony can be read to mean that he personally observed his sergeant unload Petitioner's firearm at the police station. Petitioner's hearsay objection--raised the following day--incorrectly asserted that Mawn had testified that "someone else told" Mawn that the gun was loaded. Trial Tr. at 233. Of course, that was not Mawn's testimony; Mawn stated simply that "I learned later at the station when it's unloaded by my sergeant that one bullet was in the clip." <u>Id.</u> at 173. There is no evidence suggesting that Mawn was not present while his sergeant unloaded the gun; absent a contemporaneous objection and clarification from Mawn, there is no reason to assume that Mawn's statement was hearsay.

### 2. Sufficiency of the Evidence

Having rejected Petitioner's Confrontation Clause argument, the Court now considers Petitioner's claim that the trial evidence was insufficient to convict him of Criminal Possession of a Weapon in the Second Degree. A habeas petitioner challenging the sufficiency of the evidence bears a "very heavy burden." <u>Ponnapula v. Spitzer</u>, 297 F.3d 172, 179 (2d Cir. 2002). The relevant question here is not whether this

15

Court believes beyond a reasonable doubt that Petitioner committed the crime charged; rather, the test is whether, "after viewing the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of a crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).

The Court agrees with Judge Wall's recommendation that there was ample evidence for a rational jury to conclude, beyond a reasonable doubt, that the gun was loaded and that Petitioner intended to use it unlawfully against another. Trooper Mawn testified that, when he returned to the barracks with Petitioner's gun, his sergeant unloaded a bullet from the gun. Trial Tr. at 136-142, 150. Mawn also testified that he found a mask and other disguises lying with the gun when he searched Petitioner's car. Id. at 136. These items are commonly used to obscure one's identity, and the jury could properly have inferred that Petitioner was planning on using the gun and the disguises to perpetrate a robbery. Accordingly, Petitioner's Confrontation Clause and sufficiency of the evidence claims are denied.

D. Petitioner's Fourth Amendment Claim is Rejected

Petitioner also maintains that the troopers' roadside search of his vehicle was unjustified and that the fruits of

that search ought to have been suppressed. See Obj. at 28. This claim fails because Petitioner had a "full and fair opportunity" to litigate this issue and he cannot show an unconscionable breakdown in the state court's corrective procedures. See Micolo v. New York, No. 07-CV-0449, 2010 WL 3310721, at *11 (E.D.N.Y. Aug. 18, 2010) (citing Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992)). Specifically, Petitioner litigated the suppression issues at a pre-trial hearing, and he appealed the trial court's unfavorable decision on his direct appeal. See New York v. Pagan, 23 A.D.3d 412, 805 N.Y.S.2d 557, 557-58 (2d Dep't 2005) (affirming trial court's decision that the troopers had probable cause to search Petitioner's car). New York's procedures for correcting alleged Fourth Amendment violations are facially sufficient, see, e.g., Baptiste v. Ercole, 766 F. Supp. 2d 339, 359 (N.D.N.Y. 2011), and Petitioner availed himself of those procedures. This Court, like Judge Wall, detects no procedural breakdown that would warrant relief. See R&R at 11.

## CONCLUSION

The Court expresses its gratitude to Petitioner's counsel for representing Petitioner on an appointed basis. For the reasons discussed above, Petitioner's objections to the R&R are OVERRULED and the R&R is AFFIRMED in its entirety.

17

Petitioner's habeas petition is DISMISSED.

Because reasonable jurists may disagree whether a Doyle violation occurred when the trial court elicited testimony that Petitioner invoked his right to silence, a Certificate of Appealability will issue as to that portion of this Memorandum & Order only. Petitioner cannot show that reasonable jurists would have resolved the balance of this matter differently, and thus the Certificate is limited to issue of the purported Doyle violation. See generally Middleton v. Attorneys General, 396 F.3d 207, 209 (2d Cir. 2005). The Clerk of the Court is directed to issue the Certificate of Appealability and to mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: July __27__, 2011
        Central Islip, New York